**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| HOMECARE CRM LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| THE ADAM GROUP, INC. OF | ) | |
| MIDDLE TENNESSEE, d/b/a | ) | |
| PLAYMAKER CRM, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Homecare CRM LLC ("HCRM") states the following for its

Complaint against Defendant The Adam Group, Inc. of Middle Tennessee, d/b/a

Playmaker CRM ("Playmaker" or "Defendant"), and shows the Court as follows:

### Nature of the Action

1.

HCRM is the leading provider of customer relations management software

and related solutions to companies in the home health care industry.  HCRM brings

this lawsuit against a competitor, Playmaker, which is engaging in a pattern of

wrongful activity designed to unfairly compete with HCRM and to misappropriate

HCRM's proprietary software solutions and infringe HCRM's intellectual property.

2.

Playmaker's wrongful activities include: (1) using HCRM's "HomecareCRM" and "Homecare CRM" trademarks in a manner that is likely to confuse and deceive consumers into believing that Playmaker and its software solutions originate from and/or are associated or affiliated with or sponsored by HCRM, and that freerides on HCRM's reputation as the home health care industry's leading provider of customer relations management software and solutions; (2) misappropriating significant portions of HCRM's proprietary software solutions, including the manner in which HCRM's software analyzes, compiles, presents and displays data on home health care referral sources, and using that information to design and develop competing software solutions; and (3) making false and misleading advertising claims about Playmaker and Playmaker's customer relations management software and solutions.

3.

This complaint asserts claims for: (1) trademark infringement and false designation of origin in violation of 15 U.S.C. § 1125(a) (Count I); (2) misappropriation of trade secrets in violation of Georgia and Tennessee law (Count

II); (3) false advertising in violation of 15 U.S.C. § 1125(a) (Count III); (4)

violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-

370 *et seq.* (Count IV); (5) violation of the Tennessee Consumer Protection Act,

Tenn. Code Ann. § 47-18-101 *et seq.*  (Count V); (6) common law unfair

competition (Count VI); (7) unjust enrichment (Count VII); and (8) punitive

damages (Count VIII).

## The Parties

### 4.

Plaintiff Homecare CRM LLC ("HCRM") is a Georgia limited liability

company with its principal place of business located at 4555 Mansell Road, Suite

300, Alpharetta, Georgia, 30022.

### 5.

Defendant The Adam Group, Inc. of Middle Tennessee, d/b/a Playmaker

CRM ("Playmaker") is a Tennessee corporation with its principal place of business

located in Franklin, Tennessee, which does business as Playmaker CRM.

### 6.

Playmaker markets and offers to sell and, upon information and belief, sells

its customer relationship management software and related solutions in this district

and to customers and prospective customers located in this district.

## Jurisdiction and Venue

### 7.

This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over the state statutory and common law claims under 28 U.S.C. § 1338(b) and § 1367(a).

### 8.

This Court has personal jurisdiction over Playmaker, and venue is proper in this district under 28 U.S.C. § 1391(b).

## Factual Background

### A.    Homecare CRM and Its Business

### 9.

HCRM is the leading provider of customer relations management ("CRM") software and related solutions to businesses in the home health care and hospice care industries in the United States.

### 10.

HCRM's proprietary CRM software allows companies in the home health care and hospice care (collectively "home health care") industries to efficiently manage their marketing, sales, and customer relations activities.  Functions and

4

capabilities provided by HCRM's CRM software include referral source management, business process automation, forecasting and reporting, management reporting, contract management, customer communications, calendar and activity management, and expense management.

11.

HCRM licenses the right to use its CRM software and related solutions to companies that offer home health care services to patients in the United States.

12.

HCRM's CRM software and related solutions are proprietary software solutions and services that have been designed, developed, updated and modified by HCRM and its predecessor at substantial time and expense since at least 2003.

13.

HCRM's software and related solutions have been offered for sale and sold in the market place to home health care providers since at lease 2003.

14.

HCRM's CRM software and related solutions are web based solutions that customers are able to access over the Internet or on mobile electronic devices.

15.

Beginning in or around 2005, HCRM and its predecessor have continuously used the trademark and/or service mark "HomecareCRM" to identify the source and origin of its home health care industry CRM software and related solutions and services.

16.

Since October 2009, HCRM has also used the trademark and/or service mark "Homecare CRM" as the name of its company and business. (The "HomecareCRM" and "Homecare CRM" marks are collectively referred to herein as the "HOMCARECRM Marks").

17.

Since in or around 2007, HCRM and its predecessor have operated a website at the domain name www.homecarecrm.com, at which it has provided information about and promoted its CRM software, solutions and services. Attached hereto as Exhibit 1 are copies of certain pages from HCRM's website.

18.

The HOMECARECRM Marks have been the subject of extensive advertising and promotional activity since in or around 2005, and HCRM and its

predecessor have sold tens of millions of dollars of goods and services under the Marks.

19.

Due to the longstanding use and promotion of the HOMECARECRM Marks, relevant business consumers in the home health care industry have come to associate the HOMECARECRM Marks with HCRM and with the CRM software and related goods, services, and solutions provided by HCRM.

20.

HCRM is the owner of all rights, title, and interest in the HOMECARECRM Marks, which uniquely identify HCRM and its goods and services.

21.

During 2010, HCRM came up with the idea to acquire raw Medicare and health insurance claims data, and to analyze, compile, format, and display information drawn from that data in a manner that would allow its health care industry customers to better identify and target local business referral sources, such as doctors, hospitals, and medical care facilities that refer or prescribe patients for home health care services.

22.

In late 2010, HCRM began to purchase raw Medicare claims data, and during late 2010 and early 2011, HCRM designed, developed and created a proprietary computer coding system and programs to analyze and reformat the data and provide various reports regarding the data. The coding system enabled creation of original compilations of information using original formats and layouts for displaying the information. HCRM incorporated the product of this coding system into its HOMECARECRM CRM software program.

23.

HCRM named this new proprietary data solution "Harvest." HCRM's Harvest data solution provides a user-friendly method of locating, identifying, and qualifying sources of referrals of patients for home health care services (such as local physicians and medical care facilities that refer patients for these services), and provides valuable information and reports about these referral sources. The proprietary information provided by HCRM's Harvest data solution includes identification and location of physicians and medical care facilities referring patients for home health care services; the volume of patients referred from each referral source; the diagnosis mix of such patients; patient demographic status;

payor mix; and a proprietary grading system which grades and ranks the quality of referral sources.

24.

HCRM began to offer its Harvest data solution to customers, as an addition to its HOMECARECRM CRM software, in early 2011.

25.

HCRM later expanded the scope of information in its Harvest data solution to include information regarding private health insurance claims as well as Medicare claims.

26.

HCRM licenses its proprietary Harvest data solution to its customers for use in particular geographic areas and for additional fees, integrated along with and as part of HCRM's HOMECARECRM CRM software.

27.

HCRM's Harvest data solution has been extremely well-received by and popular with its customers.

28.

The compilations of information contained in HCRM's Harvest data solution, its underlying coding system, and the manner in which the information

compilations are displayed and formatted in the Harvest solution (collectively, the

"Harvest Proprietary Data Solution") are proprietary to HCRM and are

confidential.

### 29.

HCRM has engaged in efforts reasonable under the circumstances to

maintain secrecy of the Harvest Proprietary Data Solution, including by restricting

its customers' rights to use and disclose the HOMECARECRM CRM software and

solutions, including the Harvest Proprietary Data Solution.

### 30.

The Harvest Proprietary Data Solution constitutes a trade secret or trade

secrets of HCRM.

**B.**     **Playmaker and Its Infringing Conduct**

### 31.

Playmaker is a competitor to HCRM in providing CRM software and related

solutions to businesses that provide home health care services to patients in the

United States.

### 32.

Playmaker began offering CRM software and related services for home

health care businesses in or around 2009.

33.

Playmaker offers and provides CRM software and solutions similar in nature to those provided by HCRM, to the same type of businesses involved in the home health care industry and through the same channels of commerce and in the same geographic areas as those used by HCRM.

34.

Playmaker provides these goods and services under the trademark and/or service mark PLAYMAKER CRM.

35.

Like HCRM, Playmaker provides its PLAYMAKER CRM software and services through license agreements to businesses operating in the home health care industry, and this software and services are web based and accessible over the Internet and on mobile electronic devices.

36.

Since at least 2011, Playmaker has engaged in a pattern of illegal and wrongful activities designed to unfairly compete with HCRM, misappropriate and infringe HCRM's intellectual property, improperly free-ride on HCRM's Mark and reputation as the home health care industry's leading CRM provider, and confuse and deceive consumers.

### 1.    Infringement of HCRM's HOMECARECRM Marks

37.

HCRM recently discovered that Playmaker has been using HCRM's

HOMECARECRM Marks, or virtually identical variations of the Marks, in

connection with the marketing, promotion and sale of Playmaker's CRM software

and solutions.

38.

For example, Playmaker has posted marketing and promotional videos on

YouTube incorporating the HOMECARECRM Marks in the titles and content of

the videos.

39.

One such Playmaker video is entitled "Homecare CRM/Homecare CRM

Can Increase Referrals For Hospice And Homecare," and includes within the video

a slide stating that "Homecare CRM Can Increase Referrals for Hospice and

Homecare."  Another Playmaker YouTube video is entitled "Web Based Home

Care CRM Can Boost Your Agency's Referrals," and includes within the video a

slide that makes the same statement.  Another Playmaker YouTube video is titled

"Home Care Marketing/Increase Referrals by Using Contact Management Home

Care CRM."  Each of these YouTube videos includes a link below the video screen

to Playmaker's website at playmakercrm.com.  Attached hereto as <u>Exhibit 2</u> are

copies of YouTube's web pages containing screen shots from these Playmaker

videos with the video titles and the links to Playmaker's website.

40.

As another example, Playmaker has purchased the HOMECARECRM

Marks from Google to use as keywords for Google online search advertising, so

that a Google search on the terms "HomecareCRM" or "Homecare CRM" triggers

links to Playmaker's website on the search results page.

41.

In addition, the headings of Playmaker's advertising links that appear on the

Google search results misleadingly contain identical or virtually identical versions

of the HOMECARECRM Mark.  Attached hereto as <u>Exhibit 3</u> is a copy of a

Google search result on the HOMECARECRM Mark, which includes an

advertising link to Playmaker's website that includes the heading

"Homecarecrm/PlaymakerCRM.com."  Attached hereto as <u>Exhibit 4</u> is a copy of a

Google search result on the HOMECARECRM Mark, which includes an

advertising link to Playmaker's website that includes the heading "Home Care

CRM."

42.

Playmaker also uses the terms "homecare crm" and "home care crm" as metatags in the source code of its website at www.playmakercrm.com, which improperly serves to include the Playmaker CRM website among Google's and other search engine's natural search results when a search is performed on the HOMECARECRM Marks.

43.

Playmaker's unauthorized use of the HOMECARECRM Marks is likely to cause confusion, or to cause mistake, or to deceive and mislead consumers as to the source, origin, sponsorship, or approval of Playmaker's goods and services, and/or to suggest that Playmaker or its goods or services have an affiliation or sponsorship with or approval by HCRM, which they do not have.

**2.   Misappropriations of Trade Secrets Regarding HOMECARECRM Harvest Proprietary Data Solution**

44.

Within months of when HCRM began to market and sell its proprietary Harvest solution product, Playmaker announced plans to offer a very similar service providing very similar information drawn from Medicare claims data to use to identify and target local doctors, medical and health facility referral sources for home health care businesses.

45.

Playmaker eventually started offering a comparable service, named TargetWatch, which, like HCRM's Harvest service, provides a method of locating, identifying, and qualifying sources of referrals of patients for home health care services (such as local physicians and medical care facilities that prescribe and refer patients to home health care providers), and provides information and reports about these referral sources, including: identification and location of physicians and medical care facilities referring patients for home health care services; the volume and diagnostic mix of such patients; and a grading system that grades and ranks the quality of referral services.

46.

Playmaker's TargetWatch service analyzes, compiles, formats, and displays information drawn from the claims data in manners that are very similar to the manners in which HCRM compiles, formats, and displays information drawn from the data.

47.

Playmaker is obtaining Medicare claims data to populate its competing TargetWatch service from the same claims data provider from which HCRM used to obtain claims data to populate its Harvest solution.

48.

During the time that HCRM obtained claims data from this claims data provider, it had an agreement with the data provider to format and compile data in a manner and format that was different from the data provider's standard claims data set product, and that was proprietary to HCRM and to the analysis and compilations and formats and coding that HCRM was using for its Harvest Proprietary Data Solution.

49.

HCRM's agreement with its former claims data provider specifies that HCRM would own all non-public data it provided to the provider for use in the provider's development, customization or use of technologies and processes to create deliverables for HCRM, and all results provided by those deliverables.

50.

Upon information and belief, Playmaker improperly and without authorization obtained access to HCRM's Harvest Proprietary Data Solutions, from either HCRM's former claims data provider or a HCRM customer or former customer, and improperly used the confidential and proprietary information it obtained from HCRM's Harvest Proprietary Data Solution to design, develop and/or modify its competing TargetWatch product.

51.

Playmaker's TargetWatch product analyzes, compiles, displays and presents very similar data in a substantially similar manner to the way that HCRM's Harvest solution does.

### 3.   Playmaker's False Advertising Claims about Its CRM Software and Solutions Product

52.

In connection with its commercial advertising and promotion of its CRM software and solutions, including its TargetWatch services, Playmaker has falsely misrepresented, and continues to falsely misrepresent, the nature, characteristics, and qualities of its CRM software and solutions.

53.

For example, Playmaker has represented in its "Corporate Overview" page on its website that its Playmaker CRM software solution is "home care's first true web-based customer relationship management solution." Attached hereto as Exhibit 5 is a copy of this Corporate Overview page. This statement is false, because HCRM's HOMECARECRM CRM software solution was the first web-based customer relationship management solution in the home health care industry.

54.

As other examples, Playmaker posts a "White Paper" on its website titled
"Top Ten Reasons to Choose Playmaker CRM," which contains the following
false statements:

      (a)    that Playmaker's "innovations" include "having the first
interactive point-and-click tool designed to allow sales managers to identify
and target top physicians and facilities in their area," and "the first true web-
based CRM solution built from the ground up for home care;" and

      (b)    that Playmaker CRM "has the largest user-base of any Web-
based home care CRM solution."

A copy of this White Paper is attached hereto as <u>Exhibit 6</u>.  These statements are
false because HCRM's HOMECARECRM CRM solution was the first web based
CRM software solution built for and dedicated to the home health care industry;
HCRM's HOMECARECRM software solutions included point and click tools to
identify and target top physician and facilities referral sources before Playmaker's
CRM service did; and HCRM's HOMECARECRM CRM solution has a
dramatically larger user base than does Playmaker's CRM solution.

55.

As other examples, in May 9 and May 11, 2012 press releases, Playmaker falsely represented that its TargetWatch service was the "first fully integrated market intelligence data solution within an industry-specific CRM," and that the data provided through TargetWatch was "the most comprehensive, accurate and up to date physician and facility targeting data in the United States."  Attached hereto as Exhibit 7 are copies of these press releases.  These are false statements because: (1) HCRM's CRM software and solutions (which includes the Harvest Proprietary Data Solution) is a fully integrated market intelligence data solution within a home health care industry-specific CRM product that existed before Playmaker's CRM product; and (2) HCRM's Harvest solution includes physician and facility targeting data that is more comprehensive and more up-to-date than Playmaker's TargetWatch data.

56.

Upon information and belief, Playmaker is making these and/or similar false representations directly to prospective customers during marketing and sales presentations.

## COUNT ONE

## TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)

57.

HCRM incorporates herein and realleges, as if fully set forth in this paragraph, the allegations in Paragraphs 1-56 above, inclusive.

58.

Playmaker has used and is continuing to use HCRM's HOMECARECRM Marks, and/or virtually identical variations of the Marks, without authorization, in connection with the marketing, promotion, and offering for sale of Playmaker's goods and services, including but not limited to use of those Marks in the titles and content of Playmaker videos appearing on YouTube; as search engine advertising keywords for Playmaker Internet advertisements; on the headings for Playmaker's Internet advertising links that link directly to Playmaker website; and as metatags in the source code of Playmaker's website.

59.

Playmaker's unauthorized uses of HCRM's HOMECARECRM Marks and virtually identical variations thereof have caused and are causing a likelihood of confusion, mistake, or deception: (a) as to the source, origin, sponsorship, or approval of Playmaker's CRM software and related services; and (b) as to the

affiliation, connection, or association of Playmaker and its services with or by HCRM, and/or of HCRM and its services with or by Playmaker, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.

The actions complained of herein have caused and, unless preliminarily and permanently enjoined by the Court, will continue to cause irreparable harm to HCRM and to its business for which there is no adequate remedy at law.

61.

HCRM is entitled to recover from Playmaker all damages it has sustained and may later sustain due to Playmaker's improper conduct, and Playmaker's profits obtained from its infringing conduct, in an amount to be proved at trial and to be trebled, pursuant to 15 U.S.C. § 1117.

62.

The actions of Playmaker have been willful and deliberate and amount to exceptional circumstances, justifying an award of attorneys' fees to HCRM pursuant to 15 U.S.C. § 1117.

## COUNT TWO

## MISAPPROPRIATION OF TRADE SECRETS

### 63.

HCRM incorporates herein and realleges, as if fully set forth in this paragraph, the allegations in paragraphs 1-62 above, inclusive.

### 64.

The information constituting HCRM's Harvest Proprietary Data Solution is economically valuable to HCRM, and derives independent economic value to HCRM from not being generally known to, and not being readily ascertainable by a proper means by, the public or HCRM's competitors.

### 65.

HCRM has taken reasonable steps to protect and maintain the secrecy of the Harvest Proprietary Data Solution.

### 66.

HCRM's Harvest Proprietary Data Solution is protected as a trade secret under the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 *et seq.*, and under Tennessee's Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701 *et seq.*

### 67.

Upon information and belief, Playmaker (a) acquired access to HCRM's Harvest Proprietary Data Solution by improper means; and/or (b) used HCRM's Harvest Proprietary Data Solution when it knew or had reason to know that knowledge of the Harvest Proprietary Data Solution was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was devised from or through a person who owed a duty to HCRM to maintain its secrecy or limit its use.

68.

Playmaker improperly used the Harvest Proprietary Data Solution to design, develop and/or modify its competing TargetWatch data solution, and has utilized and continues to utilize this information for its own benefit and profit.

69.

Accordingly, Playmaker has misappropriated trade secrets in violation of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 *et seq.*, and of Tennessee's Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701 *et seq.*

70.

Playmaker's wrongful conduct has caused damage and, unless preliminarily and permanently enjoined, will continue to cause irreparable harm and damage to

HCRM, including a loss of business and the continuing disclosure and use of its confidential information and trade secrets.

71.

There is no adequate remedy of law to compensate HCRM for the substantial, immediate, and irreparable harm being caused by Playmaker's conduct.

72.

HCRM is entitled to recover from Playmaker all damages it has sustained and may later sustain due to Playmaker's improper conduct, and Playmaker's profits obtained from its infringing conduct, in an amount to be proved at trial, pursuant to O.C.G.A. § 10-1-763.

73.

The actions of Playmaker have been willful, entitling HCRM to an award of attorneys' fees pursuant to O.C.G.A. § 10-1-764.

## **COUNT THREE**

## **FALSE ADVERTISING (15 U.S.C. § 1125(a))**

74.

HCRM incorporates herein and realleges, as if fully set forth in this paragraph, the allegations in paragraphs 1-73 above, inclusive.

75.

Playmaker's false advertising claims, as described above, constitute false and/or misleading descriptions or representations of fact, made in the course of Playmaker's commercial advertising and promotional activities, which misrepresent the nature, characteristics, and qualities of Playmaker's goods, services, and commercial activities, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

76.

Playmaker's false and/or misleading advertising claims are material to consumers' purchasing decisions.

77.

The actions complained of herein have caused and, unless preliminarily and permanently enjoined by the Court, will continue to cause irreparable harm to HCRM and to its business for which there is no adequate remedy at law.

78.

HCRM is entitled to recover from Playmaker all damages it has sustained and may later sustain due to Playmaker's false and/or misleading advertising claims, and Playmaker's profits obtained from its wrongful conduct, in an amount to be proved at trial and to be trebled, pursuant to 15 U.S.C. § 1117.

79.

The actions of Playmaker have been willful and deliberate and amount to exceptional circumstances, justifying an award of attorneys' fees to HCRM pursuant to 15 U.S.C. § 1117.

## COUNT FOUR

## VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT

80.

HCRM incorporates herein and realleges, as if fully set forth in this paragraph, the allegations in paragraphs 1-79 above, inclusive.

81.

Playmaker's conduct, as described above, constitutes deceptive trade practices, in that, among other things, Playmaker:  (1) has caused and is causing a likelihood of confusion and/or of misunderstanding as to the source, sponsorship, approval, or certification of its CRM software and related solutions; (2) has caused and is causing a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association of HCRM with Playmaker or with Playmaker's CRM goods and services, or of Playmaker with HCRM or with HCRM's CRM goods and services; (3) has misrepresented and continues to misrepresent that its CRM goods or services have characteristics, benefits, and

qualities that they do not have; and (4) has misrepresented and continues to

misrepresent that it has a sponsorship, approval, affiliation, or connection with

HCRM that it does not have.

82.

Playmaker's conduct constitutes unfair and deceptive trade practices in

violation of Georgia law, including the Georgia Uniform Deceptive Trade

Practices Act, O.C.G.A. § 10-1-370, et seq.

83.

Playmaker's actions complained of herein have caused, and unless

preliminarily and permanently enjoined by the Court, will continue to cause

irreparable harm to HCRM and to its business for which there is no adequate

remedy at law.

84.

Playmaker's conduct has been willful and intentional.

85.

HCRM is entitled to recover its attorneys' fees and costs incurred in

connection with this action.

## COUNT FIVE

## VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

86.

HCRM incorporates herein and realleges, as if fully set forth in this paragraph, the allegations in paragraphs 1-85 above, inclusive.

87.

Playmaker's conduct, as described above, constitutes deceptive trade practices, in that, among other things, Playmaker: (1) has caused and is causing a likelihood of confusion and/or of misunderstanding as to the source, sponsorship, approval, or certification of its CRM software and related solutions; (2) has caused and is causing a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association of HCRM with Playmaker or with Playmaker's CRM goods and services, or of Playmaker with HCRM or with HCRM's CRM goods and services; (3) has misrepresented and continues to misrepresent that its CRM goods or services have characteristics, benefits, and qualities that they do not have; and (4) has misrepresented and continues to misrepresent that it has a sponsorship, approval, affiliation, or connection with HCRM that it does not have.

88.

Playmaker's conduct constitutes unfair and deceptive trade practices in violation of Tennessee law, including the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.

89.

Playmaker's actions complained of herein have caused, and unless preliminarily and permanently enjoined by the Court, will continue to cause irreparable harm to HCRM and to its business for which there is no adequate remedy at law.

90.

Playmaker's conduct has been willful and intentional.

91.

HCRM is entitled to recover from Playmaker all damages it has sustained and may later sustain due to Playmaker's improper conduct, in an amount to be proved at trial and to be trebled, pursuant to Tenn. Code Ann. § 47-18-109(a)(3).

92.

HCRM is entitled to recover its attorneys' fees and costs incurred in connection with this action.

## COUNT SIX

## COMMON LAW UNFAIR COMPETITION

93.

HCRM incorporates herein and realleges, as if fully set forth in this paragraph, the allegations in paragraphs 1-92 above, inclusive.

94.

HCRM and Playmaker are direct competitors in the provision of CRM software and related solutions to providers in the home health care industry, and market and sell their goods and services in related channels of trade to similar or identical customers.

95.

By its conduct described herein, Playmaker has engaged in a pattern of activity amounting to unfair methods of competing with HCRM.  This conduct includes but is not limited to: (1) using HCRM's "HOMECARECRM Marks" trademark in a manner that is likely to confuse and deceive consumers into believing that Playmaker and its software solutions originate from and/or are associated or affiliated with or sponsored or approved by HCRM, and that freerides on HCRM's reputation as the home health care industry's leading CRM provider; (2) misappropriating significant portions of HCRM's proprietary CRM software

solutions, including HCRM's Harvest Proprietary Data Solution and the manner in which HCRM compiles, presents and displays data on home health care referral sources; and (3) making numerous false and/or misleading advertising claims about Playmaker and its goods, services and commercial activities.

96.

Playmaker's wrongful conduct amounts to unfair competition in violation of the common law of Georgia and Tennessee.

97.

Playmaker's actions have been willful and intentional.

98.

The actions complained of herein have caused and, unless preliminarily and permanently enjoined by the Court, will continue to cause irreparable harm to HCRM and to its business for which there is no adequate remedy at law.

99.

HCRM is entitled to recover from Playmaker all damages it has sustained and may later sustain due to Playmaker's conduct, in an amount to be proved at trial.

## COUNT SEVEN

## UNJUST ENRICHMENT

### 100.

HCRM incorporates herein and realleges, as if fully set forth in this paragraph, the allegations in paragraphs 1-99 above, inclusive.

### 101.

By the acts and activities of Playmaker complained of herein, Playmaker has been unjustly enriched.

### 102.

HCRM is entitled to recover damages from the aforesaid unlawful actions of Playmaker in an amount to be proved at trial, sufficient to prevent the unjust enrichment of Playmaker.

## COUNT EIGHT

## PUNITIVE DAMAGES

### 103.

HCRM incorporates herein and realleges, as if fully set forth in this paragraph, the allegations in paragraphs 1-102 above, inclusive.

104.

Playmaker's conduct constitutes willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

105.

As a result, HCRM is entitled to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1, and under Tennessee law, in an amount to be determined based on the enlightened conscience of the jury.

WHEREFORE, by virtue of the infringing and unlawful conduct of Playmaker as alleged in this Complaint, HCRM respectfully prays that the Court:

1.     Award judgment to HCRM and against Playmaker, on all counts of the Complaint;

2.     Preliminarily and permanently enjoin Playmaker, together with its officers, employees, agents, representatives, subsidiaries, affiliates, and assigns, and all those persons or entities in active concert or participation with them, from:

(a) using the HOMECARECRM Marks, or any other marks or symbols that include the terms "HomecareCRM," "Homecare CRM," "Home Care CRM", or any other colorable or similar imitation of HCRM's

HOMECARECRM Marks, in connection with the the sale, offering for sale, promotion, marketing or advertising of goods and services in the United States;

(b) otherwise infringing upon HCRM's HOMECARECRM Marks;

(c) misappropriating or using HCRM's Harvest Proprietary Data Solution, and from marketing or offering for sale or selling its TargetWatch product and any other portion of its CRM software solutions that was designed or developed in whole or in part through misappropriation of HCRM's Harvest Proprietary Data Solution, unless and until the product(s) are modified and independently developed without use of the Harvest Proprietary Data Solution.

(d) making false and/or misleading representations in commercial advertising or promotions about Playmaker or its CRM software and solutions or about HCRM or its CRM software and solutions, including but not limited to false representations to the effect that Playmaker's CRM software and solutions is the first and/or only CRM of its kind in the home health care industry, or provides the most comprehensive or up-to-date physician and facility referral or targeting data; and

(e) otherwise unfairly competing with HCRM, trading off of HCRM's reputation or goodwill, or injuring HCRM's business reputation in any manner whatsoever;

3.     Require Playmaker and its subsidiaries and affiliates to take prompt, affirmative action within thirty (30) days to: (a) withdraw from the public and destroy, and remove from the Internet, any Playmaker advertisements, promotional materials and website pages which contain or use the HOMECARECRM Marks or any similar marks; (b) withdraw from the public and destroy, and remove from the Internet, any advertisements, promotional materials, website pages, press releases, and other materials containing false or misleading descriptions or representations; (c) withdraw from the public and destroy any software which uses a substantially similar or identical compilation, selection, presentation, and arrangement of data as that used by HCRM in its HOMECARECRM CRM software solutions and that was designed, developed and modified in whole or in part from misappropriations of HCRM's Harvest Proprietary Data Solutions; and (d) file an affidavit with the Court confirming that these actions have been taken;

4.     Award HCRM compensatory damages sustained due to Playmaker's unlawful and infringing conduct, and all profits derived by Playmaker from its

unlawful and infringing conduct, in an amount to be proved at trial and to be

trebled;

5.      Award HCRM punitive or exemplary damages in an amount to be

determined based on the enlightened conscience of the jury;

6.      Award HCRM recovery of its reasonable attorneys' fees and costs of

prosecuting this action;

7.      Grant such other, further, and different relief as the Court deems just

and equitable; and

8.      Order a trial by jury on all appropriate issues.

Respectfully submitted this 6th day of June, 2012.

TROUTMAN SANDERS LLP

/s/      Mark S. VanderBroek
Mark S. VanderBroek
Georgia Bar No.:  724440
mark.vanderbroek@troutmansanders.com
Christopher Wiech
Georgia Bar No.:  757333
christopher.wiech@troutmansanders.com
Puja R. Patel
Georgia Bar No.:  320796
puja.patel@troutmansanders.com

5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308
Telephone:  404-885-3000
Facsimile:   404-885-3995
*Attorneys for Plaintiff Homecare CRM LLC*